UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>JEFFREY ROBERT BALCOM and<br>VIRGINIA LEE BALCOM,<br><br>Debtor. | Bankruptcy Case<br>No. 20-1090-JMM |

Appearances:

    Hyrum M. Zeyer, PETERSON ZEYER LAW, Boise, Idaho.  Attorney for the Debtors.

    Jeffrey Philip Kaufman, Meridian, Idaho.  Attorney for the Chapter 13 Trustee.

### *Introduction*

In this bankruptcy case, debtors Jeffrey Robert Balcom and Virginia Lee Balcom ("Debtors") submitted an amended chapter 13[1] plan to which the trustee, Kathleen A. McCallister ("Trustee") objected.  Dkt. Nos. 31, 42.  Debtors filed a response to the objection.  Dkt. Nos. 53, 58.  Prior to the scheduled hearing, the parties filed pre-hearing briefs.  Dkt. Nos. 59, 62.  Thereafter, the Court conducted an evidentiary hearing and it took Trustee's objection under advisement.  Dkt. No. 64.  After considering the briefing,

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

MEMORANDUM OF DECISION − 1

exhibits, testimony, and oral argument presented, as well as the applicable law, the Court issues the following decision which resolves the matter. Fed. R. Bankr. P. 7052; 9014.

Trustee's objection focuses on Debtors' Form 122C-1, which tabulates their current monthly income. This figure is used to establish whether they are above- or below-median income debtors, which ultimately determines the duration of their applicable commitment period, during which they must make monthly payments to Trustee for the benefit of their creditors. § 1325(b)(4)(A). While most of their income is not in dispute, there are two potential sources of income about which Trustee and Debtors disagree: Social Security benefits for Debtor's grandson, and the Child Tax Credit portion of Debtors' tax refund.

## Facts

Debtor Jeffrey Balcom is employed. His gross wages total $4,796.17 per month. His spouse and co-debtor, Virginia, is retired and receives retirement income in the amount of $2,294.46 monthly. Exs. 101, 201; Dkt. No. 1. Debtors' daughter, Erica Baker,[2] was born in 1980. Ms. Baker lives with Debtors. She moved away briefly at some point, returning in August 2005 when she was pregnant with her son, Debtors' grandson. She has lived with Debtors since that time. Ms. Baker was last employed in 2005. While she has some health issues, she is not disabled and is capable of working.

---

[2] Ms. Baker is Virginia Balcom's biological daughter and Jeffrey Balcom's stepdaughter. Because both Debtors refer to her as their daughter, however, for purposes of this decision, the Court will refer to Ms. Baker as Debtors' daughter.

MEMORANDUM OF DECISION − 2

Debtors pay nearly all of the expenses for Ms. Baker and her son. She does not own a car but does have a license. Debtors permit her to drive one of their vehicles, which she maintains and fills with gasoline. Debtors pay the insurance on the car. They also pay for Ms. Baker's clothing, food, and all utilities for the household. She pays no rent, nor does she provide any labor in exchange for what she receives.

Debtors' grandson has always lived at their home. His father pays $98 per month in child support, which amount is paid directly to Ms. Baker. Ms. Balcom testified that her daughter first depletes the child support funds on her own expenses before Debtors step in to help. In addition, Debtors' grandson receives food stamp benefits in the amount of $197 each month. Neither the child support payments nor the food stamp benefits are at issue here.

Debtor's grandson receives a payment from the Social Security Administration ("SSA") in the amount of $97 each month because his father receives disability benefits. Ex. 108. Those payments are payable to Ms. Baker because her son is a minor. They are deposited into an account accessible by a debit card, and only she has access to those funds. None of the SSA benefits Ms. Baker receives are paid directly to Debtors. Rather, Ms. Baker testified that she spends the money on gas, going out for coffee, clothing, and recreational items for her son, such as a skateboard. She specifically stated that she does not utilize those SSA benefits for utilities or food for the household. Ms. Balcom testified that Ms. Baker uses the SSA benefits to offset expenses Debtors would otherwise have to cover, and Ms. Baker similarly testified that if her son needs clothing

MEMORANDUM OF DECISION − 3

and the SSA and child support funds do not cover the costs, Debtors pay for what he needs.

Debtors' grandson does not pay rent nor does he contribute toward utilities. He does not provide physical labor in exchange for the support he gets from Debtors. Although he was employed over the summer, he does not drive. Instead, Ms. Balcom drove him to work in her vehicle, and he did not reimburse her.

Debtors claimed Ms. Baker and her son as dependents on their tax returns for at least the last five years. Exs. 104–107; 205–208. In each of those years, Debtors received a Child Tax Credit ("CTC") which offset their taxes owed. *Id.* In 2016–18, the CTC was insufficient to offset all of the taxes Debtors owed, and a payment was required. Exs. 104–06, 205–06. However, in tax years 2019 and 2020, Debtors received a refund. In 2019, Debtors received a CTC of $2,500 and a refund of $1,319, and in 2020, Debtors' tax return indicates a CTC of $2,500 and a refund in the amount of $1,957. Exs. 107, 207–08. Relevant here, the refund for the 2019 tax year was received by Debtors on March 6, 2020. Ex. 109.

On December 30, 2020, Debtors filed their chapter 13 bankruptcy petition. Exs. 101, 201; Dkt. No. 1. Debtors originally filed a Form 122C-1, on which they indicated they were a household of two with combined annual gross income of $85,087.56. Dkt. No. 7. Because the average median income in Idaho for a household of two is $64,929, Debtors were above-median income and would need to make payments under their

MEMORANDUM OF DECISION − 4

chapter 13 plan for a period of 60 months. *Id.*; § 1325(b)(4)(A). They submitted a plan that proposed to pay $1,560 each month for 60 months. Dkt. No. 3.

Following preliminary discussions with Trustee, Debtors filed an amended Form 122C-1, which listed the same gross income from the same sources for both Debtors, but this time indicated that their household consisted of four individuals—Debtors, their 40 year old daughter, Ms. Baker, and her 15 year old son. First Am. Form 122C-1, Dkt. No. 33. Because their annualized gross income was $85,087.56, and the average median income in Idaho for a household of four is $89,661, Debtors' first-amended Form 122C-1 indicated they were below-median income debtors and thus only required to make payments for a period of 36 months. *Id.* Debtors submitted an Amended Chapter 13 plan, proposing to pay $1,560 each month for 36 months. Exs. 102, 202; Dkt. No. 31 at ¶ 2.1. Trustee objected to confirmation of Debtors' plan. Dkt. No. 42.

Following a Rule 2004 examination of Ms. Baker, Debtors filed a second amended Form 122C-1 along with an amended schedule I to reflect the inclusion of $197 each month in food stamps their grandson receives. Second Am. Form 122C-1, Ex. 203; Dkt. No. 49. Even when those funds were added in, however, Debtors' annualized gross income was $88,627.56, rendering them below the median income by $1,033.44, or $86.12 per month. Trustee continued to object to confirmation of Debtors' proposed plan.

In her objection, Trustee contends the monthly SSA benefit paid to Ms. Baker on her son's behalf should be added as income on Debtors' Form 122C-1. Trustee further

MEMORANDUM OF DECISION − 5

argues that Debtors must include the CTC portion of their 2019 tax refund on Form 122C-1. Because Debtors are so close to the above/below median income benchmark, inclusion of either the SSA benefits or the tax refund attributable to the CTC will result in Debtors exceeding the median income and require them to make plan payments for 60 months.

### *Analysis and Disposition*

Form 122C-1 is officially titled "Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period." The form is, in essence, a worksheet bankruptcy debtors use to calculate their current monthly income ("CMI") and determine their applicable commitment period. As both the SSA benefit question and the CTC issue involve application of the definition of CMI found in § 101(10A), the Court will begin there.

1.    Current Monthly Income

The Bankruptcy Code utilizes the term "current monthly income" for at least two purposes. First, the calculation of a debtor's CMI is used to determine whether that debtor is below- or above-median income, which in turn determines the length of the "applicable commitment period," the minimum number of months the debtor must make payments under a chapter 13 plan. § 1325(b)(4)(A). The second purpose of the CMI calculation is to determine a debtor's projected disposable income, used to calculate the amount of plan payments. § 1325(b)(2). Trustee's objection, at the present, is concerned with the applicable commitment period.

MEMORANDUM OF DECISION − 6

The Court begins with the text of the Bankruptcy Code. Section 101, which defines terms used in the Code, provides in relevant part:

> (10A) The term "current monthly income"—
> > (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on—
> > > (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
> > > (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
> > (B)
> > > (i) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent); and
> > > (ii) excludes--
> > > > (I) benefits received under the Social Security Act (42 U.S.C. 301 et seq.)[.]

§ 101(10A). The Court will now consider the specific objections raised by Trustee.

## 2. Social Security Benefits of a Non-Filing Minor

As described above, Debtors' grandson receives $98 in SSA benefits due to his biological father's status as a recipient of such benefits. Because he is still a minor, those benefits are paid to Ms. Baker via a debit card. Trustee contends those benefits should be included in Debtors' CMI calculation. Debtors disagree.

MEMORANDUM OF DECISION – 7

Pursuant to § 101(10A)(B)(ii)(I), benefits received under the Social Security Act are excluded from the CMI calculation. The Ninth Circuit Bankruptcy Appellate Panel has explained the reasoning behind the exclusion of these benefits:

> If Congress intended to require all debtors to pay more, a narrow interpretation of the SSA exclusion would make sense. But the legislative history shows that the purpose was more precise: to help courts separate "can-pay" debtors from "can't-pay" debtors, and to require "can-pay" debtors to pay as much as they can afford. The text of § 101(10A)(B) demonstrates that Congress decided that "benefits received under the Social Security Act" should not count when identifying "can-pay" debtors and deciding how much more they should pay. This is reasonable because generally the SSA programs are intended to benefit people who are needy in some respect: they are aged, sick, physically or mentally disabled, suffering from family separation or abuse, or the like. Thus, Congress could reasonably have decided that SSA beneficiaries are not generally "can-pay" debtors and that SSA benefits should not count toward the debtor's ability to repay creditors. Neither the statutory text nor the legislative history suggests that Congress wanted the courts to give a narrower meaning to the SSA exclusion than a natural reading of its words would support.

*Adinolfi v. Meyer (In re Adinolfi)*, 543 B.R. 612, 620 (9th Cir. BAP 2016).

As such, if Debtors were the direct recipients of the SSA benefits, their exclusion from the CMI calculation would be beyond question. *See Drummond v. Welsh (In re Welsh)*, 711 F.3d 1120, 1131 (9th Cir. 2013) ("'current monthly income,' [] by definition, explicitly 'excludes benefits received under the Social Security Act'"); *In re Scholz*, 699 F.3d 1167, 1170 (9th Cir. 2012) (In calculating current monthly income, Congress "provided an express exclusion for … other sources of retirement income, such as Social Security benefits."); *In re Alonso*, 570 B.R. 622, 631 (Bankr. D. Idaho 2017) (in determining CMI, "the Code excludes certain kinds of income, such as Social Security

MEMORANDUM OF DECISION − 8

benefits, payments to victims of war crimes, etc."); *In re Champ,* No. BR 08-40272-JDP, 2013 WL 4463019, at *4 (Bankr. D. Idaho Aug. 19, 2013) ("Section 101(10A)(B) instructs that current monthly income excludes amounts received by debtors as benefits under the Social Security Act.").

Courts have reached different conclusions, however, on the issue of whether SSA benefits received by a non-debtor member of the household should be included in the CMI calculation. The Court will briefly discuss some of these decisions.

In *In re Olguin*, a Colorado bankruptcy court considered a situation where the grandparents of one of the co-debtors lived with the debtors and contributed $1,967 of their SSA benefits each month to the household. 429 B.R. 346, 347 (Bankr. D. Colo. 2010). In determining these SSA contributions should be included in the CMI calculation, the court observed:

> Contrary to what the Debtors might argue, this reading does not work to deprive direct recipients of Social Security benefits (here, the grandparents) of any right that they would otherwise have. Non-debtor Social Security beneficiaries take their benefits free from the reach of the Bankruptcy Code. However, when Social Security recipients give funds derived from their benefits to third parties, the funds have ceased to be in the nature of "benefits" and are more in the nature of currency that has been used by the recipients to save or spend as they choose. Thus, when Co–Debtor's grandparents make a contribution toward the Debtors' household expenses, Debtors are receiving funds from the grandparents, not benefits from the government. Such funds are part of the "average monthly income from all sources that a debtor receives" and are also an "amount paid by [an] entity other than the debtor, *i.e.,* the grandparents, on a regular basis for the household expenses of the debtor or the debtor's dependents." 11 U.S.C. § 101(10A)(A) and (B). Thus, the grandparents' regular contribution to the household expenses of the Debtors is not "a benefit received under the

MEMORANDUM OF DECISION − 9

> Social Security Act" and must be included in the calculation of Debtors' income.

*Id.* at 349–50; *see also In re DeKeyzer*, No. 20-11271-TA13, 2021 WL 1344715, at *n.3 (Bankr. D.N.M. Apr. 9, 2021) ("The mother's social security income is excluded from the definition of 'current monthly income,' *see* § 101(10A)(B)(ii)(I), but any amount paid by the mother on a regular basis for the household expenses would be included.")

Conversely, in *In re Miller,* 445 B.R. 504 (Bankr. D.S.C. 2011), the court considered a situation where a debtor did not include her non-filing spouse's SSA benefits in her calculation of current monthly income, despite the fact that the benefits, though in her husband's name, were deposited into their joint account. The court concluded that, "based on the plain language of section 101(10A) and section 522(d)(10)(A), it was Congress's intent to exclude all Social Security benefits from the calculation of current monthly income, regardless of whether those benefits are personal to the debtor." *Id.* at 507. Other courts concur. *See In re Scott*, 488 B.R. 246, 256 (Bankr. M.D. Ga. 2013) (finding the reasoning in *In re Miller* persuasive); *In re Bartelini,* 434 B.R. 285, 295 (Bankr. N.D.N.Y. 2010) ("The relevant question [is] … whether SSI is ever to be included as [disposable income] subject to the reach of unsecured creditors in the wake of BAPCPA's amendments. The answer, quite simply, is no."); *In re Wilson,* 397 B.R. 299, 320 (Bankr. M.D.N.C. 2008) ("The Social Security income of the Debtor's non-filing spouse will not be included in the determination of the Debtor's income for purposes of Section 1325(b)(1)(B)."); s*ee also* 2 *Collier on*

MEMORANDUM OF DECISION − 10

*Bankruptcy* ¶ 101.10A (Richard Levin & Henry J. Sommer, eds., 16th ed.) ("More often, the income of an adult child who lives in the household but contributes little or nothing to the household will not be included in the parents' current monthly income." (citing *In re Jewell*, 365 B.R. 796 (Bankr. S.D. Ohio 2007) (income of debtors' adult son that was not used for household expenses of debtors or dependents not included in current monthly income.))

Thus, the caselaw appears to fall into two camps: either SSA benefits are excluded, regardless of the named recipient, or included if they are regularly contributed to household expenses. The Court concludes it need not choose a side at this time.

Under the facts presented here, even if the Court were to adopt the holdings from *Olguin* and *DeKeyzer*, the Court cannot conclude that the SSA benefits at issue here were *regularly* contributed to Debtors' household. The grandparents in *Olguin* paid over a specific sum each month toward household expenses. In contrast, the facts presented here indicate only that Ms. Baker spends the SSA benefits on going out for coffee, purchasing recreational items, and filling her borrowed vehicle with gas. There is no evidence that she makes regular contributions to cover household expenses. Indeed, she testified specifically that she does not utilize the SSA benefits for utilities or food for the household. It appears she sometimes uses the SSA funds to purchase items, such as clothing, that the Debtors would otherwise have to pay for. Other times, she apparently spends the funds on personal luxuries and gas to obtain them. In other words, some

MEMORANDUM OF DECISION − 11

months she apparently contributes the funds to help offset expenses, and other months she spends them on herself.

Moreover, all witnesses testified that Ms. Baker does not contribute to household expenses. While Ms. Balcom testified that Ms. Baker exhausted her income before she sought funds from the Debtors, she was not specific in her testimony about whether she referred to exhaustion of the food stamp, child support, or SSA payments. If this Court adopted the *Olguin* and *DeKeyzer* approach, pursuant to § 101(10A)(B), the Court would need to find the SSA benefits were *regularly* paid toward household expenses before inclusion in the CMI calculus would be appropriate. At bottom, on the record before it, this Court cannot view Ms. Baker's use of the SSA benefits as the equivalent of regularly contributing to help with household expenses.

Accordingly, the SSA benefits Ms. Baker receives on behalf of her son are either not regularly contributed to defray Debtors' household expenses, or are excluded simply because they are SSA benefits. In either event, they do not need to be included on Form 122C-1 in calculating Debtors' CMI in this case. Trustee's objection on this basis is overruled.

3. Child Tax Credit

Trustee next contends the tax refund Debtors received on March 6, 2020, in the amount of $1,319, should have been included in their calculation of CMI.

On this issue, Trustee and Debtors have differing opinions about how to read § 101(10A), and rightly so. To say the structure and verbiage of the statute invites

MEMORANDUM OF DECISION − 12

confusion is to state the obvious. Debtors contend the entire statute must be read together, while Trustee argues that subsections (A) and (B) are independent from one another. Structurally, Trustee's reading makes some sense. The statute begins, "The term 'current monthly income'—" and then is followed by two subsections, (A) and (B), which are separated by an "and." It stands to reason that this means CMI includes both subsection (A) and, independently, (B).

When the text of the statute is examined, however, Trustee's reading becomes suspect. Subsection (A) is broadly drafted. The definition of CMI contained in that subsection encompasses the average monthly income from "all sources that the debtor receives derived during the [relevant] 6-month period." Read broadly, contributions to the household from other entities to defray household expenses could be considered "income" to the debtor, as income is not defined in the Code. Such a reading could render subsection (B) superfluous as an independent definition of CMI, and reduce it to a subset of subsection (A).

Moreover, if subsections (A) and (B) are completely independent, the exclusion of SSA benefits and other specific payments and compensation listed as a subset of subsection (B) would not be excluded under subsection (A). As such, SSA benefits, payments to victims of war crimes, COVID-19 payments and the like, if made directly to a debtor, would have to be included in the CMI calculation, contrary to controlling precedent. *In re Welsh*, 711 F.3d at 1131 ("the definition of 'current monthly income' excludes Social Security income.")

MEMORANDUM OF DECISION − 13

**Official Form 122C–1**

# Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period

04/20

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for being accurate. If more space is needed, attach a separate sheet to this form. Include the line number to which the additional information applies. On the top of any additional pages, write your name and case number (if known).

**Part 1: Calculate Your Average Monthly Income**

1. **What is your marital and filing status?** Check one only.
   ☐ Not married. Fill out Column A, lines 2-11.
   ☐ Married. Fill out both Columns A and B, lines 2-11.

   Fill in the average monthly income that you received from all sources, derived during the 6 full months before you file this bankruptcy case. 11 U.S.C. § 101(10A). For example, if you are filing on September 15, the 6-month period would be March 1 through August 31. If the amount of your monthly income varied during the 6 months, add the income for all 6 months and divide the total by 6. Fill in the result. Do not include any income amount more than once. For example, if both spouses own the same rental property, put the income from that property in one column only. If you have nothing to report for any line, write $0 in the space.

|   | | Column A<br>Debtor 1 | Column B<br>Debtor 2 or non-filing spouse |
|---|---|---|---|
| 2. | **Your gross wages, salary, tips, bonuses, overtime, and commissions** (before all payroll deductions). | $_____ | $_____ |
| 3. | **Alimony and maintenance payments.** Do not include payments from a spouse. | $_____ | $_____ |
| 4. | **All amounts from any source which are regularly paid for household expenses of you or your dependents, including child support.** Include regular contributions from an unmarried partner, members of your household, your dependents, parents, and roommates. Do not include payments from a spouse. Do not include payments you listed on line 3. | $_____ | $_____ |

5. **Net income from operating a business, profession, or farm**

|   | Debtor 1 | Debtor 2 |   |   |
|---|---|---|---|---|
| Gross receipts (before all deductions) | $_____ | $_____ | | |
| Ordinary and necessary operating expenses | – $_____ | – $_____ | | |
| Net monthly income from a business, profession, or farm | $_____ | $_____ | Copy here → $_____ | $_____ |

6. **Net income from rental and other real property**

|   | Debtor 1 | Debtor 2 |   |   |
|---|---|---|---|---|
| Gross receipts (before all deductions) | $_____ | $_____ | | |
| Ordinary and necessary operating expenses | – $_____ | – $_____ | | |
| Net monthly income from rental or other real property | $_____ | $_____ | Copy here → $_____ | $_____ |

Official Form 122C–1    Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period    page 1

As can be seen from the first page of the form, included above, the shaded box includes much of the verbiage from subsection (A) as introductory language, and then asks for specific information under separate paragraph numbers. This includes those

MEMORANDUM OF DECISION − 14

amounts regularly paid by entities other than the debtor, the basis of which is in subsection (B). Additionally, the exclusion of SSA benefits, found as a subset to subsection (B), is reiterated throughout Form 122C-1, even when describing income listed in subsection (A). As such, the drafters of the national form, in interpreting § 101(10A), clearly believed that subsections (A) and (B) should not be read independently.

Next, if subsection (B) is viewed as a stand-alone provision, that subsection does not contain a specific period for the Court to employ to determine the amounts paid on a "regular basis." Thus, a court could consider a short span, such as three months, or a longer span, such as one or even two years to better test the regularity of the payments. The lack of a defined time frame could result in debtors being treated differently depending on the lookback period employed.

Lastly, what little case law is available on this issue appears to support reading subsections (A) and (B) together. In *In re Orozco*, the bankruptcy court held that,

> [r]efunds that are based on tax credits, on the other hand, are not derived from a debtor's work income, and so do not show up as part of the gross pay on the Form 122C-1. Because they are a source of income that is not excluded from the definition of current monthly income in § 101(10A), they must somehow be included in the calculation of current monthly income, *if received in the six months before bankruptcy*.

613 B.R. 23, 30 (Bankr. D. Or. 2020) (emphasis added).

Closer to home, the Idaho Bankruptcy Court in *In re Coverstone*, 461 B.R. 629 (Bankr. D. Idaho 2011), considered contributions to household expenses made by an

MEMORANDUM OF DECISION − 15

adult child living with the debtors. As discussed, those types of contributions are included in CMI pursuant to subsection (B) of § 101(10A). The *Coverstone* court held that "regular contributions to household expenses would be considered income for purposes of calculating Debtors' CMI *had they been made during the six-month lookback period*." *In re Coverstone*, 461 B.R. at 635 (emphasis added).

Based on the foregoing, the Court concludes the 6-month lookback period applies to "all sources" of funds, both those that debtors directly receive and those that are paid toward household expenses by an entity other than the debtor.

Given this construct of § 101(10A), the Court will consider Trustee's contention that the CTC included on Debtors' tax returns each year should be included in the calculation of their CMI. Debtors concede that tax refunds attributable to CTC may be counted as income for CMI purposes, but contend that such refunds were received outside the 6-month window and should not be included in this instance.

This Court has not previously decided whether the CTC portion of a tax refund must be included in the CMI calculation.[3] But as Debtors have conceded that point, the

---

[3] An Idaho Bankruptcy Court has considered whether "refundable" tax credits, such as the Additional Child Tax Credit and the Earned Income Credit should be included in CMI calculations. *In re Alonso*, 570 B.R. 622, 631–32 (Bankr. D. Idaho 2017). The CTC credit is non-refundable, however, meaning if Debtors' tax obligation is less than the CTC credit, they will not get a refund. Instead, it is a dollar-for-dollar reduction of taxes due. In their brief and during oral argument, however, Debtors conceded that if the refund was received within the 6-month window, it would be considered as income and included in the CMI calculation. Memorandum in Support of Debtors [sic] Response to Trustee's Objection to Confirmation, Dkt. No. 59 at p. 4.

MEMORANDUM OF DECISION − 16

Court will not take up the issue here. This is especially appropriate in light of the fact that Debtors received their tax refund outside of the 6-month lookback period. Debtors filed their 2019 tax return and received their refund on March 6, 2020. Ex. 109. They filed their bankruptcy petition on December 30, 2020. Exs. 101, 201; Dkt. No. 1. By the Court's calculation, the 6-month lookback window extended from November 30, 2020 to May 30, 2020. Thus, the tax refunds were received outside the relevant lookback window, and may not be counted in the CMI calculation.

Without the inclusion of either the tax refund received outside of the 6-month lookback window or the SSA benefits, Debtors' median income falls below the average range, rendering them eligible for a 36-month minimum commitment period. Therefore, Trustee's objection to Debtors' amended chapter 13 plan is overruled on this basis.[4]

### *Conclusion*

Under the particular facts presented here, the Court concludes the SSA benefits received by Ms. Baker on behalf of her son may be excluded from the calculation of

---

[4] The Court is aware that applying the 6-month lookback window to *all* sources of funds bankruptcy debtors receive or utilize, including payments to help with household expenses, may invite strategic filings, e.g., delaying filing a petition until the 6-month window closes on a particular payment. Congressionally-imposed bright line rules occasionally invite these types of tactical decisions, and opportunity for them exists in other places within the Bankruptcy Code. The potential for such strategy, however, is not a proper basis on which to interpret statutory text. Second, while the lookback window affects the CMI calculation, income or contributions to household expenses may sometimes be included in determining a debtor's "projected" disposable income under the "forward-looking" approach articulated by the United States Supreme Court. *In re Coverstone*, 461 B.R. at 635 (*citing Hamilton v. Lanning*, 560 U.S. 505, 524, 130 S. Ct. 2464, 2478, 177 L. Ed. 2d. 23 (2010) ("when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation.")). Those potential issues are not before the Court today.

MEMORANDUM OF DECISION – 17

Debtors' CMI.  Moreover, because the Debtors' tax refund, based on a child tax credit, was not received during the 6-month lookback window found in § 101(10A)(A), Debtors are likewise not obligated to include it in their calculation of current monthly income on Form 122C-1.  Accordingly, Trustee's objections to Debtors' amended Chapter 13 plan are overruled.

      Debtors are directed to submit a confirmation order.



DATED:  November 5, 2021

_____
JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION − 18